Good morning, Chief Judge Kaczynski, members of the court. My name is Robin Conrad, and I am representing the appellant, Greg Dickens. I would like to try to reserve five minutes for rebuttal. Good luck. Thank you. I'd like to begin the argument by discussing briefly why Mr. Dickens' death sentence is unconstitutional under Inman Tyson. The Arizona Supreme Court's decision in this case... I'm sorry, I didn't recognize Judge Wardlaw on the video. Good morning, Judge Wardlaw. Good morning. Can you hear me? How are you? I just wanted to make sure you could hear us and see us well. I can hear and see all of you very well. Thank you. Very well. So be aware that Judge Wardlaw might ask a question from over there. Good morning, Judge. I'm sorry. I interrupted you. We're at 3 o'clock. You're forgiven. How are we supposed to play this at this point? Anyway, follow you. In order to be death eligible under Tyson where somebody doesn't have the requisite intent under Inman and they've been convicted of felony murder, Tyson requires that the defendant be an active, substantial participant in every element of the underlying felony and physically present during the criminal activity. Where does it say every element? That says that... And the defendant possessed a culpable mental state of reckless indifference. Isn't that correct? That is correct, Judge Smith. In the paragraph... We're evaluating whether Dickens was a major participant in the crime or not. And you're suggesting that he was more like Edmond, who was a mere driver. Correct. Correct? That's what I understood. Is there any evidence in Inman that the driver did any more than drive the car? The driver knew of the robbery and had... Did he know anything more than drive the car, really? The holding in Inman says that he was the getaway driver, and that's what they were basing the holding on. However, Inman... So how do you distinguish, then, Tyson? Tyson is a different case. Tyson was a major participant, they suggested. So what is there about Tyson that made them major participants? Judge Smith, you asked where I was getting that language from in Tyson, and it's immediately the paragraph preceding the holding. I realize what the paragraph says, but what we're really evaluating is whether they were major participants. Correct. So what made them major participants? As Tyson explains, major participation requires active and substantial participation in every element of the underlying felony. So did they help plan? In Tyson? Yes. Yes. In Tyson... Furnish the weapons? I'm sorry? Furnish the weapons? Correct. Okay. So Dickens, did he help plan? He did help plan. The killer testified at length how he helped match the scheme. Dickens said he knew about the robbery. The two staked out the rest area. He saw the victims as they pulled into the rest area. He watched the killer take the gun as he walked away. He figured the killer was going to go over there and rob those people. He watched the killer shoot the victims. Seems to me that's a major participant. Furnish the weapon. He drove the shooter to the scene. He watched. He drove a getaway car. And he picked the murderer up after the crime and continued in the venture. That is not major participation when we look at Tyson's analysis. In Edmonds, in the descent, wasn't it very clear that Edmonds had, in fact, helped to plan the robbery? He did. And there were other facts that showed that his participation were, in fact, more substantial. But the court's holding in Edmonds based it solely on the fact that he was the getaway driver. I think the other things were relevant. Correct. I would just urge this court to... So how do you distinguish Tyson? Tyson can be distinguished because we have to look at the analysis, the Eighth Amendment analysis done by the Supreme Court in Tyson, which specifically says far from merely sitting away from the actual scene of the murders, acting as the getaway driver, the people in Tyson, the defendants in Tyson were actively involved in every element of the kidnapping robbery and physically present. Here, Mr. Dickens was convicted on accomplished liability. He wasn't physically present. He did not... She didn't mean he wasn't physically. Sure he wasn't. Not during the robbery. He did not actively... He was there. He was... Across the road watching it. You think you actually have to be able to touch the victim to be present? Under Tyson... You say they're looking out for police, looking out for people, you know, passers-by coming, you know. Why is he not physically present? Because Tyson... Why isn't he physically present? Tyson explains to be an active participate, hence you have to be actively element... I'm sorry, actively participating in every element of the underlying felony. And here, if we look at what happened in Tyson and the cases that they cited in reaching this new exception to Edmund, this is a very limited exception. If the death penalty is going to be imposed, the person has to have this requisite culpability and extreme action. This is not a typical... What is the culpability issue? You're not really addressing that. The state of mind question. The state of mind is also tied to, in part, the major participant, because the Arizona Supreme Court found that reckless indifference was because he was a major participant and because he had considerable experience with the justice system. He was aware that Amaral had a violent temper and failed to render aid. Just a minute. As Tyson says, the defendants exhibited reckless indifference in part because they watched the killing and then chose to aid those whom they had placed in the position to kill rather than their victims. That's exactly what happened here. He watched the killing and then he chose to aid the killer rather than the victims. I respectfully disagree with you, Judge Smith. Didn't he go get him? Didn't he go get him and drive him off? Didn't he then come up with all kinds of schemes whereby they wouldn't be caught? I mean, did he ever help the victims? We can argue about whether he could have or what he did, but he did nothing to even try. Excuse me. Could I just ask that counsel be allowed to answer the question of how she distinguishes Tyson from the facts of this case? I just would like to hear counsel's answer. Judge Wardlaw, the Tyson court specifically said that there had to be a high level of participation. In that case, the defendants planned a getaway, a breakout of two convicted murderers from prison where they armed them with an arsenal of weapons. They had knowledge. This was a key aspect of the analysis in Tyson was that they knew that one of the persons they were breaking out of prison, their father, had been convicted of killing a prison guard in a previous attempted escape. That was part of the analysis to showing the reckless indifference to human life. In addition, they assisted by flagging down the victims in this case. They held the gun on the victims. They were actively participating in the kidnapping and the robbery. They could have been convicted on their own without any accomplice liability. Here, Mr. Dickens did not do the robbery himself. He was convicted of accomplice liability. But he had more conduct in terms of planning, and so does that put him in the major? Because of all he did in the planning stage, does that flip him over into the major participant? You've been able to distinguish, perhaps, that Mr. Dickens wasn't actively participating to the same degree, perhaps, as the Tyson brothers. Or maybe you disagree about that. But what about all that he did with respect to the planning, and does that make him a major participant? Because it seems like he did a lot more than Mr. Edmond. If the defendant has contested, there were two different stories of what was planned and what wasn't. But we're going on the Arizona Supreme Court facts found, and the court found that he planned the robbery. Even planning the robbery, sitting a few hours. Didn't they wait for a while to pick the right victims? Judge Callahan, they had been sitting at the rest stop. There was some disagreement of exactly how long. And didn't the young man point the gun at him? Didn't they get in some sort of beef before they even? There was findings by the trial court. But, again, that is not sufficient under Tyson. We're talking about being death eligible. And this Arizona Supreme Court decision is unreasonable because it's ignoring the fundamental principles of Tyson. Okay, thank you for saying unreasonable. Because you were, I was hearing more like we were indeed over review, and, of course, we're under EDPA. So we have to determine that the state court's determination was objectively unreasonable. No reasonable jurors could reach that conclusion that this case was more like Tyson. Can you explain why it's objectively unreasonable and help me understand that part? Yes, sure, Judge Ikuda. I think that the reason why it is objectively unreasonable is that it unreasonably extended Tyson where Tyson doesn't apply. As Tyson explains, this requires an active, substantial participation in every element of the crime. I just want to say what it is he could have done more except walk in with him and hold a certain gun. I mean, he planned, he watched, he was present, he was there to pick him up after the crime. What more could he have done short of brought another gun along and walked in and physically done the crime himself? What else is there left? Judge Kaczynski, that is exactly what Tyson requires is being an active participant. Not necessarily having the gun and shooting. What he could have done is he could have gone and participated in the robbery, which he didn't do, actually go with him and be there during the robbery, which he was. Correct. And in Tyson... Well, why isn't being a lookout enough? Being a lookout... Being a lookout, making sure police don't show up, that strangers don't show up, why is that enough? That is not sufficient under Inman. And if that was the case... Being a getaway driver is different from being a lookout. Being a lookout, a lookout is an actual participant. It's somebody who actually participates in the crime. You have a function. Your function is to make sure that while this is going on, somebody doesn't stumble in. He's actually within visual. He actually sees the shooting going on? Well, it was dark at night and he was nearly 200 yards away, which is exactly where Inman was, 200 yards away while the robbery was happening that ended up with two murders in that case as well. Didn't he just see a flash? It was dark. Correct, Judge Ferguson. The rest area was dark. There were no lights there. There were not. It was dark. It was nighttime. And he could not... No moon out. Correct. And he saw a flash. Yes. He didn't see a gun pointed at anyone and a trigger pulled. No, he did not. And unlike the Tyson brothers... Is there a fact finding that Dickens furnished a weapon? The Arizona Supreme Court upheld the death eligibility not only... It had an either or. It said he furnished the weapon or knew he had the weapon. So we have to take the facts as the Arizona Supreme Court gives us. So was there a finding by the Arizona court that he was a lookout? Not that I'm aware of, Judge Wardlaw. That's not in the record. Was there a finding that there was any way he had seen a police car, could have communicated it to the shooter? No, there is not. One other question. Is there any finding that lookouts, excuse me, that getaway drivers are also lookouts? No, Judge Ferguson. Probably most of them are lookouts. That could very well be. But we think he's a major participant. Can you talk about reckless indifference? Yes, Judge McGeer. The reckless indifference to human life, as Tyson explains it, requires egregious behavior. This is something where we are going to hold somebody responsible for the actions that they did not intend. Let's say, though, that's just where I want you to factor in the fact that apparently the woman died, it would appear, first, and that the man, when the officers came, it looks like it was probably a half hour later, he was still alive and conscious and said something about it. Could that be reckless and active indifference? Because obviously he wasn't dead. Correct. That is not reckless indifference, Judge Callahan, under Tyson. There is nothing in the record to support that Mr. Dickens knew there was a victim that was not dead. And even still, that is not the standard set forth in Tyson. If the only thing that requires a death sentence is that during a felony that ends up with a murder, that the defendant is required to go back and render aid, that's unreasonable. Tyson doesn't stand for that. Tyson suggests that the standard, the reckless disregard standard is grave risk of harm, and then several times says that means it was likely, the murder was likely to occur. It's not foreseeability, it was likely to occur. Correct. They rejected the foreseeability of death. But they also said something more. They said it was, in describing what they were talking about, they said it was likely to occur. And here, what evidence would there be? Would anybody ever find that he knew it was likely to occur? No. And that's part of the problem of the unreasonableness. Just a minute. What about that he had several prior indications that the killer was violent and unstable, that he was a high-risk patient at the treatment center for violent juveniles, that he had a violent and explosive temper, that he'd beaten up a nurse, that he had a long history of carrying guns, that he twice pointed the gun at Dickens, once at the river and once before the robbery, at his head, and that he bragged about being involved in other murders. You say those facts don't suggest that the Arizona Supreme Court could suggest that it was likely? That innocent people would be killed? Not for the requisite culpability under Tyson. Amaral was a juvenile delinquent. This is a big difference between knowing that somebody, in Tyson, somebody was a convicted murderer and had killed people in the past. The record is replete with evidence that Mr. Amaral was a pathological liar. Mr. Dickens knew that. And the fact that he was a juvenile delinquent who, yes, had had emotional outbursts from time to time, does not mean that Mr. Dickens knew and should be responsible under the Eighth Amendment for reckless indifference by planning a robbery with this person because he knew that it was so likely that a death was going to occur. Well, is likely to occur a standard? I mean, that would probably describe the situation in Tyson, but that's not the standard, right? That you have to know that the killing is likely to occur. That's just simply the facts. That's what the situation's in. The standard is reckless indifference, right? The standard is reckless indifference, but in order to understand what that means, and you have to look at how the Supreme Court decided the case and what it described as being recklessly indifferent, and this heightened standard. And when it's found that other states are allowing death sentences for people who weren't actually the killer but participated in an underlying felony that resulted in death, those cases, if you look at them cited, they all have people who were participating in the robbery, had guns, ended up with shootouts, all situations that are similar to Tyson. Let me get back to the question of who furnished the gun. Because this bears on the recklessness. I mean, to some extent it depends a little bit on what he did. Handing a gun to somebody who's unstable may be more reckless than if the guy who had the gun already. So how do we treat the state Supreme Court's finding on whether or not your client furnished a gun? They said one or the other. Does that mean they found both? How do we treat it? That's an interesting situation, and I think in order for this court to determine whether it was reasonable, we have to assume that they knew, they would uphold his death sentence on the fact that Mr. Dickens knew. I'm asking a different question. Do we take that as a finding that he did supply? I understand there are legal consequences, but the or makes a difference in terms of the legal consequences. But we do have to take it as a given, as a finding of the state courts, that he did supply the gun. I would agree that we would under AEDPA analysis, yes, because that was a fact that the court used in considering. So taking that as a given and bringing it into the recklessness analysis, this is not just a situation where this guy participates with this guy who already has a gun. What he does, his conduct is he hands a gun to a guy who he knows has serious mental problems. He has these outbursts, he's hurt people like that. So isn't that part of the recklessness analysis? We take a finding that your client supplied the gun, and isn't that part of how we deal with recklessness in deciding whether or not the state courts were unreasonable in finding recklessness? That would be part of it, because the Arizona Supreme Court did rely on its findings of major participants to show reckless indifference. I have a hard time finding it not reckless to hand a loaded gun to a guy with a trigger man's mental problems in past history. And I certainly have a hard time saying they are unreasonable in finding it reckless. That is unreasonable because, again, the facts are so different here with Amaral, who had no history of killing anyone. He had an outburst at the juvenile facility where he injured a nurse, beat up a nurse. That's in the record. That wouldn't be because he didn't have a gun. Maybe if he'd had a gun, he would have done more. I mean, he didn't have a gun, but he did the best he could, or the worst he could. But in every single armed robbery, there is a gun if there's an armed robbery. Absolutely, absolutely. But not everybody who is handed a gun has mental problems or a history of actually beating people up or hurting people. When you go handing a gun to somebody, you say, well, this is a sort of calculated killer, I mean, a calculated robber, somebody who's done it many times, but he's very careful and he doesn't lose his temper and all that. And you can have somebody who has serious problems with mental stability, and you hand that person a gun, that's a much more serious risk. Of course, the first guy could, you know, the gun might slip or, you know, the finger might slip or, you know, something like that could happen, somebody could get killed. But isn't it different when you're handing a gun to somebody with serious mental problems, serious temper problems, serious history of hurting people? That's a good argument for gun control, isn't it? Perhaps, Judge Ferguson. If we know about how serious his history was, what do we really know other than that he beat up a nurse? We knew that he was a pathological liar, he was a juvenile delinquent. Mr. Dickens testified that he was – Do we know why he was adjudicated as a juvenile delinquent? I mean, in terms of his conduct, to follow up on the Chief's question, what do we really know? He beat up a nurse, right? Right. He was at the Oak Grove Institute, which is where Mr. Dickens met him, for troubled juveniles. There's nothing else in the record to give a detailed description. He's had – We know he'd have held the gun twice on Dickens, though, too. We know that, right? Mr. Dickens did say that he had done that. But he said before that it was robbery. Correct. Did the Arizona Supreme Court rely on that, on that he beat up a nurse and that he held a gun to – That is not an Arizona Supreme Court finding. So what do we do with that? Can we rely on that if the Arizona Supreme Court did not? I think, Judge McGeehan, that this Court shouldn't rely on that. It should look to the Arizona Supreme Court's adjudication of the claim because it's the last reasoned opinion. But the Arizona Supreme Court really didn't discuss the reckless disregard crime, except its conclusion. It listed the factors that it found important in supporting the reckless indifference. It listed that Mr. Dickens was a major participant, which is fundamentally flawed. And – Just to clarify about Amaral again, I thought the state Supreme Court had made a finding that he had a violent temper or explosive temper or something along that line. Is that incorrect? No, that is correct, Judge Ikuda. The Arizona Supreme Court, as one of the findings supporting reckless indifference, was that the defendant was aware Amaral had a violent and explosive temper. It does not go into the details and why. So that was just the finding of fact supporting – or the fact that it used supporting the reckless indifference. So if he has an explosive temper, that means that he could have reasonably foreseen, that Mr. Dickens could have reasonably foreseen. How does Edmund's decision affect that? Or does that put it into reckless indifference, or does that mean that it's not – we shouldn't look at it because Edmund said just because it's foreseeable doesn't mean that he's that delusional? Well, Judge Medina, there is not – as you made clear, Edmund says foreseeability is not enough. And just because he knew that this person had a behavioral issue, that does not rise to the level as detailed in Tyson of reckless indifference to human life. This would expand Tyson beyond what the United States Supreme Court allows for. This is extending Tyson, and I go back to the fact that he is an accomplice. He's convicted of accomplice liability. Are you trying to address the Martinez issue at all? Yes. I'll turn to the Martinez issue. Oh, my goodness. Maybe you can address this question for me on Martinez. Sure. Let's assume that this is a new claim, that we are willing to send it back under Martinez. Why should we send it back for a showing of cause and prejudice? What is the error of trial counsel when we have a disagreement between two doctors over whether there was sufficient evidence of fetal alcohol syndrome? What was the mistake of trial counsel that would justify showing of ineffective assistance to counsel? Judge Bybee, there is not a disagreement between experts regarding a sufficient showing of fetal alcohol syndrome. So Dr. Roy didn't say anything about fetal alcohol syndrome. Correct. So in the initial report that counsel had, this extensive 59-page report from Dr. Roy, there was no evidence that he should have argued fetal alcohol syndrome at the time of sentencing. We argue that Mr. Donovan, trial counsel, was aware that his client's mother drank and should have followed up on those. When he turns it over to the doctor and the doctor doesn't come up with anything, and then you go to Dr. Weiss and get the MRI to see whether you should get an MRI, and Dr. Weiss says there's no justification for an MRI here, what more is trial counsel supposed to do to demonstrate that he's violated Strickland and done so obviously, objectively, unreasonably? First of all, this court should look and apply the COA standard, whether there's some merit to the claim. And what we don't know and what isn't in the record is the strategy and why trial counsel never followed up on this information. When you say he turned over the mitigation to the expert, trial counsel can't just turn over his duty. Trial counsel, when he learns facts that would be supportive of a mitigating circumstance, he needs to follow up on that and determine whether additional evidence can be presented to support a case of life. Does trial counsel have specific information about the mother's drinking during her pregnancy or just in general that she drank? That she drank. Well, not the specific information with regard to the pregnancy. Didn't she say at the time of the trial that she drank maybe three times a week and then later changed it to say that she drank every day? There was a report from Dr. Roy said that she drank three times a week, but that was sufficient to give notice to counsel that it would be reasonable for counsel to follow up. Why is counsel supposed to diagnose three glasses of wine a week as fetal alcohol syndrome? That's not counsel's responsibility, is it? Is counsel a doctor? Counsel is not supposed to diagnose, Judge Bidey, but what counsel is supposed to do is when counsel learns of factors and in the 90s when this trial occurred in 93, fetal alcohol syndrome was a factor that was being considered and we need to send this back to the district court to determine whether in fact... You may have a case of medical malpractice here. I'm trying to figure out why you have a case of legal malpractice. And that is because he knew of this information and failed to follow up and get appropriate experts to determine and present this mitigating circumstance. That is... Your argument is not a lack of investigation with regard to the drinking. It's a lack of following up with the doctors. Once trial counsel knew and had this tantalizing indication in the record that there was something that should have been followed up on to present as this critical mitigating evidence, counsel didn't do that and that's the allegation here. The woman says she drinks three times a week. You think that that is something that suggests fetal alcohol syndrome? While she was pregnant. While she was pregnant she was drinking alcohol and so that would trigger reasonable counsel to follow up on that information and present something. This information was given to the doctor, right? The doctor put this information in his report. It was given to the doctor. Correct. So I'm not sure, what else can a lawyer do? A lawyer is told what the mother says. Correct. Who appointed the doctor? The defense counsel. It was defense counsel's expert that he... Did the mother say she drank three times a week when she was pregnant or she now drinks three times a week? I believe it was while she was pregnant. I can check the record on that. Did Mr. Dickens have an EEG prior to sentencing? No. No, there was no EEG done and that was a misstatement by the expert in the record. That was incorrect and I think... On the record it says that on October 21st, 1993 at the sentencing hearing, Dr. Roy testified that a CAT scan and EEG showed that Dickens was clear of brain damage. That is correct and he was incorrect in making that testimony. I see my time is up. Thank you. Mr. Dickens. Good morning. May it please the court. I am John Todd. I represent the respondent in this matter. Following an evidentiary hearing in state court, the state court decided that Mr. Dickens' claim that his sentencing counsel was ineffective, which is claim 19 here. They decided that against Mr. Dickens and that was a merit ruling. No federal court has found that ruling objectively unreasonable. In fact, the only federal court that has considered that issue, the district court, found that ruling to be, in fact, reasonable. I have a question in terms of, could Mr. Dickens still file a post-conviction petition in an Arizona court alleging ineffective assistance of counsel based on the failure of trial counsel and post-conviction counsel to present mitigated evidence of fetal alcohol syndrome or organic brain damage? Would the court be compelled to deny that as procedurally barred? Is it really futile? If he could fit it under newly discovered evidence, which under the facts of this case he could not. You're saying it's not a new claim and it's not substantial, correct? I'm saying that the evidence of the alleged evidence of fetal alcohol syndrome that led to some sort of brain dysfunction is evidence. It's not a claim as it was presented in this court. The district court correctly simply discarded that evidence and looked at the claim where there was a marriage ruling as, under pinholster, he was required to do. Well, but just a minute. You came and argued this case once before me, and at that point you argued there was a new claim. Did you not? What the argument was... I mean, it's my understanding, and I read the red brief again at 38 to 44, and again at 40 to 41, I cite a number of cases to support that this is a new claim, that it was never exhausted, and therefore we ought to get rid of it. And, in fact, that was your argument all until you came back with now this new idea that we ought to consider this not to be a new claim, that it ought to be now a claim already made, and pinholster should take care of it. I'm just wondering why it is we had a flip-flop if it wasn't result-oriented. I mean, we stood for two years with a pretty hard argument this was a new claim and would be thrown out on exhaustion, and now we have a new change. I was waiting to see what it was that you thought was the great difference. Well, first, a couple of things. First, we argued this case before pinholster was decided, and then a year lapsed and then Martinez was decided. As I understood the argument that I was making was that the new evidence fundamentally changed Claim 19, and so it shouldn't be considered. But one of the issues on appeal that a COA was granted on was whether or not Claim 19, whether the state court decision was reasonable. And so it might well have been inarticulate, but I was supporting the district court's finding that you don't consider this evidence as a side and you simply look at Claim 19 and whether or not the state court decision was reasonable. Well, it doesn't sound like an inarticulate response to me. It read to me the way Judge Smith has described it as a 180-degree change in its verification. Is that not a fair characterization? What am I missing? In the district court, I argued that the claim was fundamentally different and that under the existing law at that time that it should be procedurally barred. The district court, say again? Because it was a new claim. It had not been. No, not because it was a new claim, because the additional evidence changed the claim. Fundamentally altered. Fundamentally altered the claim. That's the same result, because it was fundamentally altered and it's not exhausted and then it's over. However, the district court, sort of ahead of its time, said we're just going to disregard the new evidence and we're going to look at the claim that the state court decided. And so when I got on appeal, one of the issues on appeal, the second one where the COA was granted, was whether or not the state court's ineffective assistance of counsel decision was unreasonable. And I argued that it was reasonable. And the first claim on appeal was whether or not the district court properly disregarded this new evidence, whether there was at that point even cause and prejudice based on PCR counsel's failure to bring it. Is it necessary to Martinez that there actually be a new claim as opposed to a default in presenting evidence that might have been determinative? Now, that may be a complete overlap. And maybe if it's a sufficiently important evidence, it is a new claim. But Martinez writes through by saying that there has to be ineffective assistance of trial counsel. But it doesn't say that the ineffective assistance necessarily has to be not presenting a whole claim as opposed to doing something else. Your Honor, I would disagree. The Martinez throughout talks only in terms of claims. That's not so. Now, if there was a reason why it had to be that way, it might be because the procedural default concept doesn't have a lot of gravitas without a different claim. But Martinez itself is talking about ineffective assistance of trial counsel. And maybe once it says new claim. But most of the time it doesn't. Most of the time it's talking about ineffective assistance of trial counsel, which is not necessarily failure to raise a claim. It has to be with regard to ineffective assistance. It has to be the PCR counsel has to be ineffective with regard to trial ineffective assistance. But it doesn't say that it has to be ineffective with regard to not raising a claim of trial counsel ineffective assistance. I've gone back with Martinez, and it talks in terms of claims. I do not see any point where it talks in terms of simply evidence. But you don't get to Martinez until you find that the state court ruling under Penholster was unreasonable. This case is exactly like Penholster, which the panel didn't have the benefits. No ruling is possible, is it? Say again? If the claim was not presented, there can't be a state ruling which is unreasonable, right? If the new evidence had not been presented in state court, is that what we're saying? Either the new evidence or the new claim, whichever way you want to characterize it, if it's not presented in state courts, you can't judge the reasonableness of the state court's action with respect to a claim or evidence that it hasn't considered. That is true, and that's why we have Penholster. I don't know. Penholster was argued in Barrington. This is very courtroom. Yes, I understand. But the. So can this claim be presented to the state courts? What is the status? Let's say Mr. Vickens now goes to state court and says, here are the things that my car counsel should have discovered or suggested to you, alcohol syndrome. That's a different expert. You know, that claim, what do you call it? A new claim or a repackaged enrolled claim? What happens if he goes to state court now? It would have been procedurally defaulted. It couldn't. It would not have. The state court would not hear it. And does that depend on whether the state court thought it was a new claim or just whatever thought it was new evidence? Well, it would be given to the state court as a new claim. And Penholster really wasn't about a new claim, was it? No, it was happening. In fact, we concluded that the Penholster claim was not new. And the Penholster did not fail to exhaust it. That's what we held. And that's what the Supreme Court was dealing with. I guess I'm trying to figure out why Penholster is at all applicable here. If you look at footnote 11 in Penholster, they talk about the same positions that State and Dickens had below, that these new diagnoses by these two new experts were never presented to the state court. And California was arguing that those new experts fundamentally changed the nature of the claim. And Penholster was arguing, oh, no, they simply supported and bolstered the claim. And the Supreme Court in footnote 11 said, even if, even if they simply bolstered the claim, you can't consider it because you have to look under 22 D1. You have to look 2254 D1. You have to look simply at the state court's decision on the merits. So what happened in Penholster, as I understand it, after the case comes back to the Supreme Court and went back, I don't know this on the record, but just from what I read in the news, I understand that Penholster goes back to the state courts and tried his luck there. I don't know what happened, and I certainly can't comment on it. But why isn't Dickens required to present this to the state court? I mean, you gave a pretty categorical answer to my question. You said it would be barred. But Martinez speaks not just to the federal courts. Martinez speaks to the state courts. Why couldn't he raise a Martinez claim in state court and say, look, I want to raise an IAC claim at trial, and my reason is my PCR counsel was ineffective under Martinez. Have the state courts dealt, I mean, the state courts in Arizona dealt with the question of whether there was a new avenue for presenting a case to state court because the post-conviction counsel was ineffective. As far as I know, the Arizona courts have not dealt with that specific issue. However, under the existing law in Arizona, that would not be a claim that you could – But that's without Martinez, right? They haven't looked at Martinez. They might look at Martinez and say, well, the U.S. Supreme Court has spoken. There is such a thing as a Martinez claim. I'm not asking you to concede anything on behalf of the state. I'm just saying, why isn't this something that needs to be presented to the state courts in the first instance? Have them consider Martinez and whether they want to take a look at this. And then we would look at it when it comes back to us, if it comes back to us. And they might grant relief. I know you oppose it. I'm not trying to commit you to anything. But isn't that at least a plausible scenario? The state would probably prefer that as opposed to having a hearing or having any sort of proceeding in federal court as opposed to state court initially. Because this applies to all inferior courts, state and federal. Right. I don't see why Martinez can't be raised there. But if it can be, why isn't it the prudent thing for us to do is to at least see what the state courts say to that? Because you don't get to Martinez until you resolve the pinhole issue. What I want you to know, though, is Martinez in fact directed at state courts? Or is Martinez only a ruling about cause and prejudice in federal court? The ruling, as I understand Martinez, is simply federal, equitable decision concerning. Because it's specifically not based on the fact that constitutional, that there's a constitutional problem with ineffective PCR counts. Right. Right. So it doesn't. I'm sorry. In state courts where they have a cause and prejudice exception to their procedural bar rule? Not not in Arizona. We have an exception for newly discovered evidence. We have exceptions for actual innocence. We have exception for change in the law that would affect that particular case. But those are the major exceptions that we have. How do you contrast what happened here with Justice Vermeier's scenario regarding a Brady violation that would render the claim unadjudicated for purposes of 254D and therefore should be remanded under Martinez? I think the, of course, the Supreme Court didn't decide what is and is not a new claim. I understand. In fact, they expressly refused to draw the line between those adjudicated and those not. Justice Sotomayor, in her scenario, had a Brady violation which was alleged but didn't have any good evidence on it. And then she added evidence and said this is exactly the type of claim that ought to go back under Martinez. So I wonder why this isn't exactly what she was articulating. Well, the, in her hypothetical, it was actually newly discovered evidence because the state had precluded the defense from having that newly discovered Brady material. So in Arizona, they would have been able to go back to state court because it's newly discovered evidence. And then it would go through the state court procedure. So that would, in fact, be a new claim. Now, the, but this new evidence doesn't create a new claim. Now, they, the petitioner, the prisoner, is the one that designs the claim. Are you making a narrow argument based on this case or are you making a broader argument? Is your argument just that the, your argument is not that new evidence can't make a new claim. It's just that it didn't in this case? No, my, my argument is that where there has been a merits ruling in state court on a claim, if you come to federal court. You're arguing that new evidence can't make a new claim. Yes. For this purpose. Right, right. In other words, I, I'm saying that I believe Penn Holster changed this court's interpretation of Bezquez versus Hillary. That, that distinction that these United Circuit cases have drawn between fundamentally altering a claim and simply supporting a claim no longer is viable law. Because if, if you come to federal court and you add new evidence that the state court has never had an opportunity to see. And the state court has made a merits ruling under, as I understand Penn Holster, you simply disregard. You disregard if, if the claim was decided on the merits and were under 24, 2254 G1. But the problem, but first of all, the Martinez issue isn't a claim anyway. It is a cause and prejudice determination. And second of all, when you get to the claim, if it's a different claim, then it has to be decided on the merits. Well, if the state court has decided it on the merits under EPA, under the way Congress envisions, then that, that deserves to be looked at as a merits decision. Any evidence that is simply added. In your view, Martinez just turns on the words used in the claim. It's like, if the words used in the claim could encompass this new evidence, even if it's completely different in its character than what was presented before. Are you arguing that it's law, that, is that what you're saying? And you're saying, therefore, that if there's any ineffective assistance of trial counsel claim raised, you can't raise a different one? I'm saying they could, they could have chosen to raise that in a separate claim of ineffective assistance of trial counsel because he didn't discover, feel alcohol syndrome that somehow caused some brain dysfunction. They could have when, at the PCR stage? They could have done it when they pled in federal court. And that would have been procedurally defaulted. And then that would raise Martinez's claim. As to that claim, but, but as to the claim that we're deciding here, the one where the state court has made a merits decision, there's. I'm not, really not understanding nothing. What is the difference between the two scenarios? I mean, that's what they're saying. They're saying he didn't present the fetal alcohol syndrome and that was an effective assistance of counsel. You're saying that's the same claim as the other one. I'm saying that the, when the prisoner files his petition, he has the ability to frame it, claims as he wishes. If he simply tries to get around the state court ruling. Who is he now? The prisoner. He's supposed to know all this, huh? Well, all these complexities, these twists and these turns, these ups and these downs, these changes of position. You know, what do you think the framers would have thought about the way habeas corpus has been minimized? And so the great writ now becomes the great joke or the great discussion or the great puzzle. I mean, it's just the whole thing that someone's listening and another planet. Let's think we're all insane. I have a question on the Edmonds claim. Yes. I guess what's your position on the walkie talkie testimony? That testimony seems like it was disavowed before the Arizona Supreme Court. I think it was disavowed before the panel. And the trial judge also said he disavowed it. So. So that I don't think that's here, too. Right. Right. That's probably the equation. But as long as we're talking about it and Tyson for a minute, I believe on the Edmond case that Justice White was very clear that he looks simply at the Florida opinion. And that was significant because the trial court had found that Edmond had helped plan the robbery. The Florida opinion disavowed that and said, no, he was simply the wheel man 200 yards from the murder. So that was very limited. Edmond Tyson, I believe the way they set the issue up originally was can a person be sentenced to death who participates before the murder, doesn't participate in the murder, but participates after the murder. And then they came up with the standard, which the court itself in Edmond Tyson talks about it being a general standard. And as such, it's similar to the Strickland standard that in applying the standard, courts, state courts have a great degree latitude of reasonableness. And it depends on the facts and circumstances of the given case. But can you help me out on that? Sure. This individual we're talking about, Dickens, was found to have participated before and after. He was 200 yards away like Edmond was. He didn't pull the trigger. And so I'm having a hard time distinguishing the two. In other words, it seems to me that what the Supreme Court told us in Edmond is if you don't have an intent to kill, being a getaway driver isn't enough. But the facts found and relied upon in this case to impose the death penalty seem to me to read like a job description for a getaway driver. So I'd like to hear what you have to say about how do I distinguish this case from Edmond. Well, first of all, Edmond, very clearly, there was no – he didn't participate, according to Justice White, in the crime at all. Here – Mr. Dickens, right? Participated in planning – I should have said planning the crime. Mr. Dickens helped plan, agreed on – Let me make a procedural point on that. The dissent in Edmond made a big deal out of the fact that he was involved in the planning. The majority didn't say he wasn't, and the Florida Supreme Court didn't say he wasn't. The Florida Supreme Court simply said, we don't care if he was. And the Supreme Court, by not even engaging in that, seemed to say it doesn't matter if he was. So I really don't understand your procedural analysis when, in fact, there seemed to be no doubt that he was involved in the planning. Isn't that footnote one in Edmond? Say again? Isn't that footnote one in Edmond? That's what the Supreme Court discussed in footnote one. I don't recall if it's footnote one. The Florida Supreme Court's understanding of the evidence differs sharply from that of the trial court, with a suspicious degree of Edmond's participation. In its sentencing findings, the trial court concluded that Edmond was a major participant. That Ed – And became a major participant in the robbery because he planned the robbery in advance and himself shot Perseus. Both of these findings, as we understand them, were rejected by the Florida Supreme Court's holding that the only supportable inference with respect to Edmond's participation was that he drove the getaway car. The Supreme Court says, our court found one thing. The Supreme Court found he was nothing but the getaway driver. That's footnote one. Right. So that's your procedural point, as I understand it, right? Right. Yes, Your Honor. I was just using Justice White's words to answer the question. Thank you, Your Honor. Also, another really significant fact that's in the record is while they're waiting there for the targets, appropriate targets come along, that in the same rest area, a group of six individuals pulled up. And there was a conversation between Dickens and Amaral about their gun only had five bullets, five. And these were six individuals. And Amaral told Dickens. I think it was shots to get. Yes. It was five shots. Right. And Dickens and, excuse me, Amaral told Dickens that he didn't want to take a chance robbing these people for that very reason. They only had. It seemed like they had too many people to control. Too many people to control and only had five shots, only five bullets. What's your position on the Arizona Supreme Court's determination that Dickens had a violent and explosive temper? Say again? What about the violent and explosive temper? The Arizona Supreme Court made that determination. But I don't, I'm trying to find if the Arizona Supreme Court actually made the findings and supported that determination. And as has been discussed, it looks like the trial court referred to Amaral beating up the nurse and pointing a gun at Dickens. But I'm not sure that the Arizona Supreme Court heard those findings. Well, as I believe that this court, because you're looking at whether or not the decision of the Arizona Supreme Court was objectively reasonable. And in doing that, you're not limited to the specific words that the court says, but to the record that it bases its decision on. So I don't think it's legally significant whether the Supreme Court itself went into a catalog of why they thought Dickens or Dickens had knowledge of Amaral's violence tendencies. But if the record supports that, then that's been it's a reasonable decision by the court. Does that answer your question? I have a different question. I had that question too, but I have a different one now. Okay. What are the facts that support the Supreme Court, the Arizona Supreme Court's finding that Dickens failed to render aid knowing that one victim might not be dead? How could he know that? I think that's a reason. The entire record. I think that was a reasonable inference to draw from the evidence. The Dickens drove through the rest stop and he, in fact, he picked Amaral up just sort of beyond the rest stop. And he Dickens, according to Amaral, told him that he had driven through the rest stop, I believe, something to just to make sure that the job was done or something to that effect. And then we have the Brian Bernstein being found alive sometime after that. To make sure the job was done, the robbery? I'm not sure. Because in this case, the jury acquitted Dickens of premeditated murder and of conspiracy to commit murder, which seems to demonstrate at least the jury found no intent with respect to the murder, even though there was intent with respect to the robbery. I believe that's a fair reading of the record. Yes. Can I back up and ask a question about your statement that he drove through the rest stop? Because Amaral testified that he couldn't remember that. He couldn't recall whether Dickens drove through the rest stop. So where should I look if it's not in Amaral's testimony to find support for your statement? Yes. I mean, I'm not sure right now where in the record it is. But my understanding of the record is that, in fact, that was based on Amaral's statement that Dickens told him that he had driven through the rest stop. Okay. But if I don't find it in Amaral's testimony, there's no other place I should look. I don't believe so. I thought he said that he couldn't say for sure, but that Dickens had told him that he was going through the rest stop to make sure nobody was moving or everything was taken care of. Is that – that was referenced by Judge Reinhardt, I believe, in his sentence. Is that the evidence the Arizona Supreme Court was – I believe that is, that Amaral couldn't recall if he drove through the rest stop, but he had said that he had. Right. And on cross-examination, he then said he couldn't recall that, right? That he couldn't recall driving through the rest stop or couldn't recall staying there. The latter. I'm sorry. So he says on direct – on direct he says that's what Dickens told him? I don't – And then on cross-examination, he backtracks? I don't recall, Your Honor. Are you going to look it up and send us a 28-J? Sure. But it is so, isn't it, Counselor, that in Tyson it says, and I quote, defendants exhibited reckless indifference in part because they watched the killing and then chose to aid those they had placed in the position to kill rather than their victims. And there's no question that the Arizona Supreme Court has found that happened. Absolutely, Your Honor. So whether he went back or didn't, whether he knew if somebody survived or didn't, may be a red herring based on what Tyson told us. Right, absolutely, that the fact is he didn't call 911. He didn't do anything to render any survey to the victims. He didn't report the crime. Did Edmond? No. Edmond? No. Edmond nor Tyson. Well, Edmond was just a getaway driver. According to the Florida Supreme Court. The U.S. Supreme Court. The U.S. adopting their finding, yes. Now, even I mean, the I think you're over time. I have a minute left. No, no, you don't. Oh, oh, I'm sorry. Thank you. Thank you. We've got a couple of minutes. You can have a couple of extra minutes or a bottle if you take it. Thank you. I just want to touch a few points on the Martinez issue. Judge Callahan, I think you asked about whether Dickens could present this claim, this new claim in state court. He actually asked in the district court, he said, if any of my claims this court finds that they are unexhausted, I ask that I go back to state court to exhaust. That was in his traverse at page 29 to 32. The district court did not allow him to go back to state court to present this. I'm sorry, why does he need the district court's permission to go to state court? State courts are open, right? He has a lawyer. Lawyer can walk in. Would the district court hold you in contempt if you filed something in state court? He is represented by the federal public defender, the office that I work for, and we are not allowed to litigate in state court without a direct order. Well, I don't do it per se. I don't understand. Why does the district court? Oh, I'm sorry. He asked the district court for permission for the public defender to do it for him. Correct, which is the procedure. Because he's not, he's allowed to do it per se, right? He's allowed to get another lawyer to do that. Perhaps, but he's represented by counsel and it's. When you say perhaps, was there some doubt? Your Honor, he's currently represented by his habeas attorneys who are doing what they can to litigate. In federal court. Correct. But he's not represented, he's not in any sense precluded from getting another lawyer or filing in state court, is he? I don't suppose so. I guess he could ask to have a lawyer appointed to raise a procedurally barred claim, which would be unlikely. The Arizona Supreme Court, that was not, that's just not how the federal habeas proceedings worked. It would normally be, we ask for a rind stay to go back to exhaust claims. You could have gone to state court. You could have got another lawyer, you could have done it per se, you could draft the papers for him for him to file. We are not allowed to do that. Because it's just a question of getting a lawyer. It's not a question of being precluded from going to state court. Perhaps. I have a larger problem that, as your opposing counsel agrees, it was doubtlessly foreseeable default in Arizona state court, given their limited view of the fact that they don't seem to have a cause and precious standard anyway. Right. He wouldn't be able to raise this claim. It would not be. But this just predicts what the state courts would do with it. It's not precluded from going there and asking. It's not precluded from going there and saying, well, the Supreme Court has decided for Martinez, take Martinez's account in deciding whether or not you're going to let him go forward. Now, if they say no, then you're in a different situation. In the whole line of cases that have one category of procedural defaulted cases are ones in which we can know from the state's procedural rulings that they're not going. You don't have to go back and re-exhaust if you know that they're not going to allow it. Correct. And that's why the district court imposes the procedural default, because it would be a waste of time to send the prisoner back to state court and take up the state court resources to simply have the claim be procedurally barred, because there is no exception under the rule. That was pre-Martinez, though, too, right? There's been no case to my ruling since Martinez allowing this, and there's been no change to the rule. He hasn't tried to go back post-Martinez and say, look, in light of Martinez, you ought to take another look. Nobody has made it, so it's not precluded by any ruling of the state court. Your client hasn't made it. I mean, that's the state of the record. The state of Arizona also hasn't changed its procedural ruling and the rules under which the practice rules for prisoners to bring a claim that wasn't presented before that could have been presented before. The other issue that I just want to note is that Martinez and the recent ruling in Trevino made clear that a prisoner should have one full opportunity to present an ineffective assistance of counsel claim. Why haven't you had that opportunity? I'm sorry? You've already raised an IAC claim. It's already been adjudicated in the state courts. Why do you get a second shot just because you've now got a different theory? It's a different claim and a different... The claim is pretty loose because in the PCR that you filed in the state court, it was called a claim and then there were nine sub-claims under the claim. The claim was IAC. You just didn't bring a tenth sub-claim that might have raised a slightly different theory. But you've had an opportunity, unlike in Martinez, to raise IAC. You just didn't raise the fetal alcohol syndrome as part of that claim. Martinez isn't that limited, and Trevino makes clear. In Trevino, during his first PCR proceedings, the prisoner raised an ineffective assistance of counsel claim. He just didn't raise the claim that he was then barred after he got into federal court and his federal counsel investigated and found fetal alcohol syndrome and brain damage. That claim was then defaulted. If the Supreme Court didn't want it to work that way, then Trevino would not have come out the way it did. Okay, thank you. Thank you. There's a solid testament to that.
judges: Kozinski, Pregerson, Wardlaw, Berzon, Bybee, Callahan, Ikuta, Smith, Murguia, Christen, Watford